## Case No. 9,454.

MERCHANTS' TRANSP. CO. v. The NEW YORK.

[N. Y. Times, Nov. 21, 1861.]

Circuit Court, S. D. New York. 1861.

COLLISION—WEIGHT OF EVIDENCE.

[A libel for the loss of a steamer sunk in collision with a schooner on a clear night in Long Island Sound will be dismissed where it appears that the vessels, properly manned and carrying proper lights, were aware of each other's presence in due season, and libelants could not establish by preponderating evidence that the schooner changed her course.]

[Appeal from the district court of the United States, from the Southern district of New York.

[This was a libel in rem by the Merchants' Transportation Company against the schooner New York for collision. Libelants were owners of the steam propeller Charles Osgood, which was lost in collision with the schooner New York on Long Island Sound.

There was a decree in the district court dismissing the libel. The libelants appeal.]

NELSON, Circuit Justice. On the evening of the 10th of November, 1858, the Osgood was proceeding on one of her usual trips through the Sound from the city of New York to Norwich, Conn., and the schooner on one of her regular trips in the opposite direction, from Boston to New York. The wind was about north northwest, with a breeze of some five or six knots the hour. The direction of the propeller was about east northeast, and that of the schooner about west by south. She was on her starboard tack, and had been from three miles east of New Haven. The night was clear, and no difficulty in seeing vessels at a considerable distance. Both vessels had lights and saw each other in time to have avoided the disaster. They came together in the middle of the Sound, northeast of Huntington's Light, the schooner striking the propeller, head on, on the larboard side, opposite the boiler, and about one-third of the way from the stern. The propeller filled and sunk in a few minutes, from the effects of the blow. On the part of the propeller, it is insisted that when she discovered the schooner, which was a mile or more ahead, she was a point in her weather-bow, and that if she had kept her course the collision could not have happened, but that, as she approached the propeller, and while at an angle of forty-five degrees on her line of sailing from the propeller, she suddenly changed her course, bearing away before the wind, until she struck her, as already stated. On the part of the schooner, it is claimed that she discovered the propeller a long distance ahead, half a point on her weather bow, and that, as the two vessels approached, the propeller attempted to pass across the bow of the schooner; that the helm of the latter was immediately ported, to luff into the wind and avoid a collision, but the two vessels were so close to each other it was impossible to prevent it. The court below found in favor of the view taken by the schooner, and dismissed the libel. It was sustained in the proofs by three witnesses on board this vessel, the master and two hands, one at the wheel and the other the look-out. The view of the propeller was sustained by two, the master and the man at the wheel. The look-out was not examined, but his absence was accounted for, he having gone to California.

It is quite clear, unless the propeller can maintain her position that the schooner suddenly changed her course by bearing away before the wind, and thus produced the disaster, that the ground of the libel fails, as no fault can be justly imputed to her. If she kept her course, which she had pursued from a point three miles east of New Haven, and which must have been seen on board the propeller for a mile or more before the

collision occurred, it was the duty of the latter to have adopted the proper movement to avoid her. The case turns upon this question of fact, did or did not the schooner change her course and thus produce the disaster? We think·the weight of the proofs with the finding of the court below; at least upon the evidence, we cannot say that the libelants have established the affirmative so fully and satisfactorily as to justify us in charging this vessel with the loss. The case is one of great carelessness, or want of skill, on the one side or the other. The night was not dark, nor the wind very strong. Both vessels were near the middle of the Sound, which is several miles wide at the place of collision. They saw each other at a distance that afforded full time for any necessary movement to have prevented the meeting. Our surprise is nearly as great that it happened at all as if it had occurred in open day. Decree below affirmed.